IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANNETTE WILLIAMS MOSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:17-cv-348-SMD |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Annette Williams Moss ("Plaintiff") applied for disability insurance benefits under Title II of the Social Security Act ("the Act") alleging a disability date of December 31, 2012. (R. 75, 205). The application was denied initially. (R. 90-91). A hearing was held before the Administrative Law Judge ("ALJ") on October 5, 2016. (R. 39-73). The ALJ rendered an unfavorable decision on November 25, 2016. (R. 22-34). The Appeals Council denied Plaintiff's request for review. (R. 1-4). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id*. Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court concludes that the Commissioner's decision is to be **REVERSED AND REMANDED**.

### I. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial

evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must

defer to the Commissioner's decision if it is supported by substantial evidence.*" Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact that they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen,* 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines

3

disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

### III. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 49-years-old at the time of her alleged onset date. (R. 74). She had a high school education and past work as a mailroom clerk. (R. 33, 90). Plaintiff alleged disability onset on December 31, 2012, due to "chronic pain in right knee, degenerative

5

disc disease, sciatica, herniated disc, carpal tunnel, anxiety, depression, panic attacks, lbp." (R. 75, 205).

The ALJ found Plaintiff's severe impairments included the following: lumbar degenerative disease, anemia, depression, and anxiety. (R. 24). Based on these impairments, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform a reduced-range of light work as follows:

> light work . . . except with the following limitations: occasional pushing and pulling of foot controls, bilaterally; occasional climbing ramps and stairs; never climbing ladders and scaffolds; occasional stooping, kneeling, crouching, and crawling; never being exposed to unprotected heights and moving mechanical parts; occasional exposure to humidity and wetness, extreme cold and heat and vibration. The claimant is limited to simple tasks and frequent interactions with supervisors, coworkers, and the public. The claimant is limited to occasional changes in a routine work setting.

(R. 28). Based on this RFC, the ALJ found Plaintiff was able to perform her past relevant work as a mailroom clerk. (R. 32). The ALJ also found that Plaintiff could work as a garment shorter, inspector, and tagger. (R. 33). Thus, the ALJ found her not disabled. (R. 33-34).

## IV. ISSUES

Plaintiff identifies the following four issues in her "Statement of the Issues:"

1. The ALJ's residual functional capacity determination is unsupported by substantial evidence as the ALJ failed to properly credit the opinion of Dr. Goore.

2. The ALJ's RFC finding is unsupported by substantial evidence and is the product of legal error due to the failure of the ALJ to consider Plaintiff's obesity as required by SSR 02-1p.

3. The ALJ's RFC is unsupported by substantial evidence and is the product of legal error due to the failure of the ALJ to properly account for Plaintiff's moderate limitations in concentration, persistence, and pace.

4. The ALJ's adverse credibility determination is unsupported by substantial evidence and is the product of legal error.

## V. ANALYSIS

**A. The ALJ did not properly consider the opinion of Plaintiff's treating physician.**

Plaintiff argues that the ALJ erred by failing to properly credit the opinion of her treating physician, Dr. Myrtle Goore. (Doc. 16) at 5. Plaintiff asserts that the ALJ erroneously concluded that Dr. Goore's treatment records were inconsistent with the opinion she provided about Plaintiff in a Medical Source Statement ("MSS"). *Id*. at 7-8. Further, Plaintiff argues that the ALJ erred by neither mentioning nor applying the regulatory factors to Dr. Goore's opinion. *Id*. at 8.

In determining how much weight to afford medical opinion evidence, the Social Security Regulations require an ALJ to consider a variety of factors, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question. *See* 20 C.F.R. § 404.1527(d)(1)-(6). While the ALJ is not required to explicitly address each of those factors, the ALJ must provide "good cause" for rejecting the opinion of a treating physician's medical opinions. *Lawton v. Comm's of Soc. Sec.,* 431 F. App'x 830, 833 (11th Cir. 2011). Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011) (citations omitted). "Good cause" to discount the treating physician's opinion exists

7

when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Winschel,* 631 F.3d at 1179. If the ALJ discounts the treating physician's opinion, he "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440 (citations omitted).

On April 20, 2016, Dr. Goore completed a MSS in which she opined the following:

- Plaintiff would miss five or more days per month of work, and could occasionally sit, infrequently stand and walk, and never stoop or climb. (R. 513).

- Plaintiff can frequently lift/carry one to five pounds, occasionally lift/carry six to ten pounds, infrequently lift/carry 11-20 pounds, and never lift/carry 20 pounds or more. *Id.*

- Plaintiff can frequently use her hands for fine manipulation and gross manipulation, and can frequently raise both arms over her shoulders. *Id.*

- Plaintiff's condition causes moderately severe pain, and she needs to lie down due to pain, fatigue or other impairment for twice a day for half an hour each time. (R. 514).

- Plaintiff would be off task 60% of the day due to her condition. *Id.*

- Plaintiff has no functioning in her ability to work in coordination or proximity to others without being distracted, nor adapt to ordinary stress or changes in the workplace. *Id.*

- Plaintiff is frequently precluded from performing activities within a schedule and maintaining regular attendance, sustaining an ordinary routine, and maintaining attention and concentration for extended periods of time. *Id.*

- Plaintiff does not need to elevate her legs above her waist and hips and that she did not need an assistive device to ambulate. *Id.*

8

- Plaintiff would not suffer any side effects from prescription medications that would interfere with her ability to maintain focus and concentration. *Id.*

- Plaintiff's sleep is adversely affected as her depression causes early awakening and arthritis causes pain on turning in bed which reduces deep sleep. (R. 515).

- Plaintiff's condition or medication causes lapses in memory or concentration, and she would need to take unscheduled breaks beyond the regular breaks and that the limitations have lasted or are expected to last for 12 consecutive months or more. (R. 514).

The ALJ considered Dr. Goore's MSS as follows:

> The undersigned gives partial weight to Dr. Goore's opinion, as it is not consistent with her treatment records. For example, the claimant's extremities showed no clubbing, cyanosis or edema. Her neurological examination showed normal strength in the upper and lower extremities. She had a normal sensory examination and she had full range of motion of the shoulders, elbows, and fingers. (Exhibit 7F). Thus, Dr. Goore's treatment notes are not consistent with her medical source statement. In addition, Dr. Goore opined that there is no need for claimant to elevate her legs; she does not suffer side effects from prescribed medication that interferes with the ability to focus and concentrate; and she does not use [an] assistive device.

(R. 30).

The undersigned finds that the ALJ did not provide good cause for affording Dr. Goore's opinion "partial weight." The ALJ stated that Plaintiff's extremities showed no clubbing, cyanosis, or edema. (R. 30). However, the ALJ does not state—and the undersigned is unable to conclude—how this contradicts Dr. Goore's opinion. Indeed, Dr. Goore found that Plaintiff would have no limitations in the use of her hands for fine and gross manipulation, which presumably could be affected by clubbing, cyanosis, or edema. To the extent that the ALJ found the absence of these diagnoses relevant to Plaintiff's ability to infrequently stand or walk, the undersigned notes that Plaintiff has other conditions—namely, degenerative disc disease, which was confirmed by objective testing

9

and supported by the assessment of Dr. Taylor, an orthopedic specialist—that would more likely be the reason Dr. Goore restricted Plaintiff's abilities in these functions. (R. 307, 520). Further, the ALJ stated that Plaintiff's "neurological examination showed normal strength in the upper and lower extremities" and that she had "a normal sensory examination and . . . full range of motion of the shoulders, elbows, and fingers." (R. 30). The ALJ does not explain—and the undersigned is unable to discern—how this medical evidence contradicts any statement made by Dr. Goore in the MSS. Instead, it appears to the undersigned that these statements actually support Dr. Goore's assessment that Plaintiff is able to raise both of her arms over her shoulders. Because the undersigned finds no inconsistency between Dr. Goore's records and the opinion he provided in the MSS, the undersigned concludes that the ALJ failed to establish the requisite good cause for discounting Dr. Goore's opinion. *See Winschel,* 631 F.3d at 1179.

Because the ALJ failed to provide good cause for discounting Dr. Goore's opinion, this case is due to be reversed and remanded so the ALJ can properly consider the opinions of Plaintiff's treating doctor.

## VI. CONCLUSION

Accordingly, for the reasons set forth above, the decision of the Commissioner will be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) so that the Commissioner can conduct additional proceedings consistent with this opinion.

A separate judgment is entered herewith.

DONE this 25th day of March, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE